VERONICA A. TAYLOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taylor v. Commissioner
Docket No. 10142-94.
United States Tax Court
T.C. Memo 1995-442; 1995 Tax Ct. Memo LEXIS 443; 70 T.C.M. (CCH) 729; September 19, 1995, Filed *443 Decisions will be entered under Rule 155. Veronica A. Taylor, pro se. Katherine Holmes Ankeny and J. Robert Cuatto, for respondent. CHIECHI, Judge CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1991 in the amount of $ 11,930 and an addition to tax under section 6651(a)(1)[1] in the amount of $ 435. The following issues remain for decision: (1) Is the payment that American Telephone and Telegraph Company (AT&T) made to petitioner in 1991 excludable from her gross income for that year under section 104(a)(2)? We hold that it is not. (2) Is petitioner liable for 1991 for the addition to tax under section 6651(a)(1)? We hold that she is. FINDINGS OF FACT Petitioner resided in Mesa, Arizona, at the time the petition was filed. Petitioner began employment with *444 AT&T in 1986. In 1990, petitioner, who had received training in computer science, was a senior data processing clerk at AT&T and was responsible for the mainframe computer and for processing the bills for AT&T's western region. On February 13, 1990, AT&T discharged petitioner from its employment. Petitioner's Claim for Unemployment Insurance Benefits
On March 10, 1990, the deputy of the Arizona Department of Economic Security (Arizona department) determined that petitioner had been discharged by AT&T for misconduct, and, consequently, he denied her claim for unemployment insurance benefits. Petitioner through a representative (petitioner's representative) appealed that determination (petitioner's appeal). On April 3, 1990, a hearing on petitioner's appeal (April 3, 1990 hearing) was held before an administrative law judge at the Arizona department. At that hearing, AT&T's representative contended that petitioner was discharged because she failed to notify AT&T beforehand that she would miss work on February 12, 1990. Petitioner's representative contended that petitioner's failure to notify AT&T about her missing work was due to a misunderstanding. Neither petitioner nor petitioner's *445 representative alleged at the April 3, 1990 hearing that petitioner suffered any personal injury as a result of her discharge by AT&T. In a decision that was mailed on or about April 10, 1990, to the parties involved in petitioner's appeal, the administrative law judge found that petitioner had erroneously assumed that she was not scheduled to work on the date in question and that her conduct was not negligent or willful. He therefore reversed the determination of the deputy of the Arizona department that AT&T had discharged petitioner for misconduct. Petitioner's Discrimination Charge
On February 21, 1990, petitioner filed a charge of discrimination (discrimination charge) with the Equal Employment Opportunity Commission (EEOC) in which she alleged that AT&T violated title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sec. 2000e-2 (title VII). Petitioner made the following specific allegations in that discrimination charge: PERSONAL HARM: On February 13, 1990, I was discharged. In addition, I was harassed and suspended for two weeks without pay. RESPONDENT'S REASON FOR ADVERSE ACTION: Kathy Gertz, Supervisor, *446 indicated I was being discharged for misconduct. DISCRIMINATION STATEMENT: I believe I have been discriminated against because of my race, White, and sex, Female, in violation of Title VII of the Civil Rights Act of 1964, as amended, for the following reasons: 1. I was not the only employee involved in misconduct. 2. Jim Jameson, a male employee, harassed me by slapping my [sic] on the derriere. 3. I am aware the company has not suspended other employees for misconduct.
The two allegations in petitioner's discrimination charge that were listed in paragraphs 1 and 3 under the heading "DISCRIMINATION STATEMENT" and that are quoted above concerned the following alleged misconduct of petitioner that occurred in 1989: AT&T had accused petitioner of reading a confidential letter of one of her managers. Petitioner signed a statement admitting that she had read that confidential letter, and, as a result, she was suspended for two weeks without pay. Petitioner further alleged that a coworker, Jim Jameson (Mr. Jameson), was also involved in the misconduct, but that he was not suspended. The allegation in petitioner's discrimination charge that was listed in paragraph *447 2 under the heading "DISCRIMINATION STATEMENT" and that is quoted above was that Mr. Jameson harassed petitioner by "slapping" her on her "derriere". Mr. Jameson was a coworker of petitioner, but not a manager or a supervisor at AT&T. On June 14, 1991, the EEOC dismissed the discrimination charge filed by petitioner, having found that there was insufficient evidence that AT&T had violated title VII. Petitioner did not appeal the EEOC's dismissal of her discrimination charge to the U.S. District Court for the District of Arizona. Petitioner's State and Federal Court Actions
On November 28, 1990, petitioner commenced an action in the Superior Court of Arizona (state court action) by filing a complaint (state court complaint) against AT&T and the Communication Workers of America Local 7050 (the Union). That complaint contained two counts: "COUNT ONE (Breach of Contract)" and "COUNT TWO (Breach of Duty of Fair Representation)". Count one alleged that AT&T and the Union had breached their collective bargaining agreement by failing to permit petitioner to have an arbitration hearing on her claim relating to her employment and termination by AT&T and by denying her request to hire *448 her own attorney to process that claim to arbitration. Count one further alleged that petitioner was terminated by AT&T without just cause and without the use of progressive discipline in violation of the collective bargaining agreement in effect between AT&T and the Union. Count two of the state court complaint alleged that the Union had a duty to represent petitioner with good faith and fair dealing and that the Union had breached its duty of fair representation by refusing to process her grievance to arbitration and by failing to permit her to hire her own attorney to process her case to arbitration. Petitioner requested the following relief in the prayer of the state court complaint: 1. Reinstatement to her former position and original seniority date along with lost backpay and fringe benefits. 2. Prejudgment and postjudgment interest. 3. Attorney fees and costs. 4. Any other amount that the Court deems just and proper.
Petitioner did not allege in the state court complaint that she had suffered any personal injury as a result of the allegations stated in that complaint. Nor did petitioner seek damages for pain, suffering, emotional distress, or mental anguish. *449 Sometime in early 1991, petitioner's state court action against AT&T and the Union was removed from the Superior Court of Arizona to the U.S. District Court for the District of Arizona. (The action pending in Federal court as a result of that removal will be referred to herein as the Federal court action.) General Release and Agreement Not To Sue
In or about October 1991, petitioner, AT&T, and the Union signed a document entitled "General Release and Agreement Not to Sue" (Agreement). Petitioner had an adversarial relationship with AT&T when she signed that Agreement. The Agreement provided in pertinent part as follows: I. SCOPE OF AGREEMENT
This Agreement settles, resolves, and compromises all issues between AT&T, the CWA [the Union], and Employee [petitioner] concerning her employment with AT&T; including but not limited to, (a) the disciplinary action taken concerning Employee's no-report on December 18, 1989, (b) Employee's requests(s) to participate in an Employee Assistance Program or "EAP", and (c) termination of Employee's employment with AT&T. II. CONSIDERATION
In consideration for this Agreement AT&T agrees to pay Employee $ 40,000.00, less withholding *450 required by law, as back wages, by check to be delivered to counsel for the CWA. III. RELEASE
A. In exchange for this consideration, Employee expressly waives and releases AT&T and its officers, directors, agents, subsidiaries, affiliated companies, successors, predecessors, assigns, employees, attorneys and representatives, from any and all claims, liabilities and causes of action, whether known or unknown, that she has or may have arising out of or related to her employment or the termination of her employment with AT&T, including, but not limited to any claim under any state or federal law pertaining to contract or tort and under any other law, statute, and/or regulation whatsoever. B. Employee agrees that this general release extends to any claim that she has or may have, known or unknown, against CWA relating to her employment by AT&T or the termination of such employment, including, but not limited to, any claim arising under section 301 of the Labor Management Relations Act, 29 U.S.C. § 141 et seq.
C. Employee represents that she has not filed any charge or lawsuit against AT&T, arising out of or related to her employment and/or *451 separation from employment with AT&T, except that action number Civ. 91-0017 which has already been dismissed in the United States District Court for Arizona. D. Employee agrees to seek dismissal with prejudice of any pending action undertaken by Employee against any party to this Agreement and arising out of or related to her employment and/or separation from employment with AT&T. IV. FUTURE EMPLOYMENT
Employee further agrees that she will not seek employment with AT&T or any AT&T affiliate, subsidiary or entity in the future. V. LIABILITY
No party admits any liability by virtue of entering into this Agreement or by providing or receiving any consideration as a result of this Agreement. * * * * VIII. MERGER
All parties acknowledge that this Agreement constitutes the entire Agreement between the parties and that any previous representations, whether oral or written, shall have no force or effect. All parties further agree that this Agreement may not be modified except where such modification is in writing and signed by all parties, or their representatives. IX. FULL UNDERSTANDING
Employee acknowledges that she has had sufficient time to completely *452 read and understand this document, that she has had the opportunity to obtain expert advice, including consultation with legal counsel, concerning its effect, and that she signed this document voluntarily and with full understanding of its meaning and effect.
The disciplinary action referred to in section I.(a) of the Agreement was the disciplinary action taken when petitioner's father was ill and she missed work on December 18, 1989. Petitioner believed that AT&T failed to use progressive discipline with respect to that disciplinary action and violated the collective bargaining agreement. Petitioner's request to participate in an employee assistance program or "EAP" referred to in section I.(b) of the Agreement was petitioner's request for counseling in an employee assistance program when her father was ill. The reference to the District Court action no. Civ. 91-0017, in section III.C. of the Agreement was to the Federal court action petitioner filed against AT&T that was pending in the U.S. District Court for the District of Arizona after it was removed from the Superior Court of Arizona. There is no mention in the Agreement that petitioner had suffered any personal injury *453 or that the payment that AT&T was obligated to make under that Agreement was to compensate petitioner for pain, suffering, emotional distress, or mental anguish. On or about the same day on which the Agreement was signed in or about October 1991, AT&T paid petitioner $ 40,000 (AT&T Payment), less withheld taxes, pursuant to section II of that Agreement. Petitioner did not request a refund of those withheld taxes until she filed the petition herein in 1994. Petitioner's Income Tax Return Filing History
Since 1986, when petitioner began working for AT&T, she has filed her own Federal income tax returns. The Internal Revenue Service (IRS) has never filed a tax return on her behalf. Petitioner did not file a Federal income tax return for 1991. OPINION Petitioner bears the burden of showing that respondent erred in determining that the AT&T Payment is includible in her gross income for 1991 and that she is liable for the addition to tax under section 6651(a)(1) for failing to file an income tax return for that year. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). AT&T Payment
Section 61(a) provides the following sweeping definition *454 of the term "gross income": "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived". Not only is section 61(a) broad in its scope, Commissioner v. Schleier, 515 U.S.    ,    , 115 S. Ct. 2159, 2163 (1995), exclusions from gross income must be narrowly construed, id.; United States v. Burke, 504 U.S. 229, 248 (1992). Although not altogether clear, as we understand her position, petitioner contends that the AT&T Payment qualifies for exclusion from her income under section 104(a)(2) because it was made to "settle the defamation of character, the stress, the aggravation, the pain that they've caused me and my family over a period of time, over approximately a year and-a-half." [2] Respondent counters that petitioner has not proved that she is entitled to exclude the AT&T Payment from her gross income under section 104(a)(2). *455 Gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness". Sec. 104(a)(2). The regulations under section 104(a)(2) restate the statutory language of that section and further provide: The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution. [Sec. 1.104-1(c), Income Tax Regs.]
Where damages are received pursuant to a settlement agreement, such as is the case here, the nature of the claim that was the actual basis for settlement controls whether such damages are excludable under section 104(a)(2). United States v. Burke, supra at 237. The determination of the nature of the claim is factual. Seay v. Commissioner, 58 T.C. 32, 37 (1972). Where there is a settlement agreement, that determination is usually made by reference to it. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), *456 affg. T.C. Memo. 1964-33. If the settlement agreement lacks express language stating what the settlement amount was paid to settle, the intent of the payor is critical to that determination. See id.; Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21. Although the belief of the payee is relevant to that inquiry, the character of the settlement payment hinges ultimately on the dominant reason of the payor in making that payment. See Agar v. Commissioner, supra at 284; Fono v. Commissioner, 79 T.C. 680, 694 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984). The Supreme Court recently summarized the requirements of section 104(a)(2) as follow: In sum, the plain language of § 104(a)(2), the text of the applicable regulation, and our decision in Burke establish two independent requirements that a taxpayer must meet before a recovery may be excluded under § 104(a)(2). First, the taxpayer must demonstrate that the underlying cause of action giving *457 rise to the recovery is "based upon tort or tort type rights"; and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness." * * * [Commissioner v. Schleier, 515 U.S. at    , 115 S. Ct. at 2167.]
Each of the requirements that must be satisfied in order to qualify the AT&T Payment for exclusion from income under section 104(a)(2) involves two inquiries that are similar. The dual inquiries under the first requirement are whether petitioner's underlying claim was based on tort or tort type rights and, if it was, whether the underlying claim gave rise to the AT&T Payment. The dual inquiries under the second requirement are whether petitioner's alleged injuries were personal in nature and, if so, whether the AT&T Payment was received on account of those injuries. Based upon our examination of the record before us, we find that petitioner has not satisfied either of the two requirements necessary for exclusion of the AT&T Payment from her income under section 104(a)(2). She has not shown that the underlying cause of action that gave rise to that payment was "based upon tort or tort type rights". Nor has she established that *458 the AT&T Payment was received "on account of personal injuries or sickness". Indeed, petitioner has not even established that, prior to execution of the Agreement, she made a claim against AT&T and/or the Union that was both based on tort or tort type rights and for personal injuries or sickness. The only claims of petitioner involving AT&T and/or the Union that are disclosed by the record herein relate to claims for unemployment insurance benefits, discrimination under title VII, and breach of contract and a duty of fair representation. After AT&T discharged petitioner from its employment on February 13, 1990, she filed a claim for unemployment insurance benefits. The record herein is devoid of evidence suggesting that petitioner alleged as part of that claim that she had suffered personal injury. Petitioner's claim was initially denied on March 10, 1990, by the deputy of the Arizona Department of Economic Security and thereafter allowed on or about April 10, 1990, by an administrative law judge reviewing that determination. On the record before us, we find that petitioner's claim for unemployment insurance benefits was not both based on tort or tort type rights and for personal *459 injuries. Petitioner also filed a discrimination charge with the EEOC on February 21, 1990, after AT&T had terminated her employment, in which she alleged that AT&T had violated title VII. The grievances alleged by petitioner in her discrimination charge occurred before the amendment of title VII, effective November 21, 1991, and those alleged grievances were subject to the provisions of title VII in effect before that amendment (pre-1991 version of title VII). The Supreme Court has held that a payment received in settlement of a backpay claim under the pre-1991 version of title VII is not excludable from gross income because such a claim is not based upon tort or tort type rights within the meaning of that section and the regulations thereunder. United States v. Burke, 504 U.S. at 241-242. On the record before us, we find that petitioner's discrimination charge under the pre-1991 version of title VII was not both based upon tort or tort type rights and for personal injuries. [3]Id.
*460 The state court complaint in the state court action, which, by removal of the state court action to Federal court, became the Federal court complaint, was based on breach of contract alleged against AT&T and the Union and breach of a duty of fair representation alleged against the Union. Petitioner did not claim in the state court complaint that she had suffered any personal injury as a result of the allegations stated in that complaint. Nor did she seek damages for pain, suffering, emotional distress, or mental anguish. On the record before us, we find that petitioner's Federal court action was not both based on tort or tort type rights and for personal injuries. Even assuming arguendo that petitioner had established that she made a claim that was both based on tort or tort type rights and for personal injuries, she would also have to show that that claim gave rise to the AT&T Payment and that that payment was received on account of personal injuries or sickness. Based on our review of the record herein, we find that petitioner has not established those facts. Our reading of the Agreement leads us to conclude that the payment that AT&T made thereunder was not, as contended by petitioner, *461 for the purpose of settling claims for defamation of character, aggravation, pain, suffering, or any other personal injury or sickness. [4] In this connection, we note that petitioner presented no evidence about AT&T's intent in making the payment in question. Instead, she asserted in her testimony that she intended the AT&T Payment to settle, inter alia, her claim for "the defamation of character, the stress, the aggravation, the pain" that AT&T had caused her to suffer. [5] That self-serving and uncorroborated assertion ignores the Agreement, in particular section I relating to the scope of the Agreement and section II relating to the consideration that AT&T agreed to pay under the Agreement. *462 Based on our review of the entire record in this case, we find that petitioner has not carried her burden of showing error in respondent's determination that she must include in her income for 1991 the AT&T Payment. Accordingly, we sustain that determination. Addition to Tax
Respondent determined that petitioner is liable for 1991 for the addition to tax under section 6651(a)(1) in the amount of 25 percent of the amount required to be shown in the return. [6] The parties stipulated that petitioner did not file an income tax return for 1991. In the case of failure to file an income tax return on the date prescribed for filing, *463 section 6651(a)(1) imposes an addition to tax equal to five percent of the amount required to be shown in the return, with an additional five percent to be added for each month or partial month during which such failure continues, not to exceed 25 percent in the aggregate. The addition to tax under section 6651(a)(1) does not apply if it is shown that the failure to file was due to reasonable cause, and not to willful neglect. Since 1986, when petitioner began working for AT&T, she has filed her own Federal income tax returns. Nonetheless, she did not file such a return for 1991. As an explanation for that failure, petitioner testified that she believed the IRS would file that return for her. She claimed in her testimony that she based her belief on the advice of an unnamed IRS employee. Petitioner acknowledged in her testimony that the IRS had not filed a tax return for her prior to taxable year 1991, that AT&T had withheld taxes from the payment at issue, and that she did not request a refund of those withheld taxes until she filed the petition in 1994. Even assuming arguendo that we were willing to accept petitioner's self-serving and uncorroborated testimony that an unnamed IRS *464 employee advised her that the IRS would file a 1991 income tax return on her behalf, the record is devoid of evidence showing what information petitioner gave such employee or what the duties of that employee were. On the record before us, we find that petitioner has not shown that she had reasonable cause for failing to file her 1991 income tax return. Accordingly, we sustain respondent's determination that she is liable for the addition to tax under section 6651(a)(1). To reflect the foregoing and the concessions of the parties, [7]
Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner filed no briefs in this case. In her petition, she alleged: The amount given from AT&T was a settlement won over a termination of employment. I disagree that the amount of the settlement 40,000 had taxes withheld. This was a settlement, not earned income.
In the trial memorandum she submitted in this case, petitioner alleged: It was to my understanding by all parties that represented me that the monetary award I was receiving from AT&T was for damages caused to me from my allegations against them in regards to discrimination. At the present time I do not recall any mention from my representatives that assisted me in this discrimination complaint against AT&T that my award was for loss of wages.↩
3. As part of the discrimination statement in that charge, petitioner alleged that a former coworker "harassed" her by "slapping" her on the "derriere". The record does not show that petitioner claimed that she suffered any personal injury relating to that alleged behavior of her former coworker.↩
4. We do not attribute any particular weight to the general language in sec. III.A. of the Agreement, which appears to be boilerplate, that, in exchange for the AT&T Payment, AT&T and the Union are being released "from any and all claims * * * including, but not limited to any claim under any state or federal law pertaining to contract or tort↩". (Emphasis added.)
5. Petitioner further testified that she intended the AT&T Payment to settle the discrimination charge she filed with the EEOC and that no one from the EEOC ever contacted AT&T about that discrimination charge. As discussed above, the claims in petitioner's discrimination charge were subject to the pre-1991 version of tit. VII, and payments made in settlement of such claims are not excludable under sec. 104(a)(2). United States v. Burke, 504 U.S. 229, 241-242↩ (1992).
6. In calculating the amount of the addition to tax she determined under sec. 6651(a)(1), pursuant to sec. 6651(b)↩, respondent reduced the amount of tax required to be shown in the return by the amount of any part of the tax that was paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax that could have been claimed in the return.
7. On brief, respondent conceded an issue not raised in the notice of deficiency, i.e., respondent conceded that petitioner is entitled under sec. 219 to a $ 2,000 deduction for her contribution in 1991 to an individual retirement account.↩